## Latrobe Building and Loan Association, Appellant, v. Fritz.

[Marked to be reported.]

*Married women's contracts—Act of June 3, 1887.*

Since the passage of the married person's property act of June 3, 1887, P. L. 332, a married woman may make any kind of a contract in relation to the improvement of her separate estate which she could make if she were a single woman.

*Confession of judgment by married woman.*

A confession of judgment made by a married woman is valid where it appears that the judgment bond was given to secure a loan made by plaintiff to defendant for the purpose of being used by her to pay for the erection of one or more buildings on land belonging to her in her own right, and that the money was paid to the contractor who erected the buildings.

In such a case where the bond is for sixteen hundred dollars conditioned for the payment of eight hundred dollars, and the judgment is entered for the latter sum, the amount for which judgment may be entered can be sufficiently ascertained upon the face of the instrument, and the judgment is valid.

Argued Oct. 5, 1892. Appeal, No. 129, Oct. T., 1892, by plaintiff, from order of C. P. Westmoreland Co., Feb. T., 1889, No. 88, striking off judgment against Margaret A. Fritz. Before STERRETT, GREEN, WILLIAMS, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

On July 2, 1887, judgment was entered on a judgment bond, given by plaintiff to defendant, in the following form:

" And now, to wit, 2d July, 1887, I, John Chamberlain, pro-

thonotary per warrant of attorney in said bond filed, hereby enter judgment against the defendant in favor of plaintiff for the penal sum of Sixteen Hundred Dollars, conditioned for the payment of Eight Hundred Dollars, with costs of suit, attorney's commission of 5 per cent for collection and release of error.   Inq. cond. stay of ex. and exemp. waived.   Entered 2d of July, 1887."

The bond did not show for what purpose it was given.   Subsequently defendant presented a petition to strike off the judgment.   The court referred the petition to M. N. McGeary, as auditor, who reported the facts as stated in the opinion of the Supreme Court.   The auditor recommended that the judgment be stricken off.   Exceptions to the auditor's report were dismissed by the court, and a decree entered striking off the judgment.

*Error assigned,* inter alia, was decree, quoting it.

*Paul H. Gaither,* with him *J. A. Marchand* and *G. D. Albert,* for appellant.—Plaintiff may show, in reply to plea of coverture, special circumstances which make a married woman liable: 1 Chit. Pl. 449 ; Mahon v. Gormley, 24 Pa. 83 ; Murray v. Keyes, 35 Pa. 387 ; Finley's Ap., 67 Pa. 457 ; Lloyd v. Hibbs, 81 Pa. 306 ; Imhoff v. Brown, 30 Pa. 504.

A judgment entered by virtue of warrant of attorney which does not disclose on its face coverture of defendant will not be stricken off, although the fact that she was a married woman may appear in the evidence, if the evidence also establishes facts necessary to render her liable upon the note containing the warrant of attorney under the married person's property act of June 3, 1887: McIntire v. Bimber, 9 Pa. C. C. R. 463 ; Guignon v. Covell, 10 Pa. C. C. R. 195; Ewing v. Ewing, 7 Pa. C. C. R. 260; Myers v. Stauffer, 5 Pa. C. C. R. 657.

The married person's property act of 1887 has enlarged the capacity of a married woman to contract for certain purposes, for which she may bind herself and her estate or business by her contracts, and lawfully confess a judgment: Koechling v. Henkel, 144 Pa. 215.

*Alex. D. McConnell,* with him *H. P. Laird* and *John B. Keenan,* for appellee.—It has always been the policy of the law to prevent a married woman from incurring a personal liability:

Jamison v. Jamison, 3 Wh. 457; Shnyder v. Noble, 94 Pa. 286; Sixbee v. Bowen, 91 Pa. 149; Brown v. Pendleton, 60 Pa. 419; Brunner's Ap., 47 Pa. 67; Wightman's Ap., 29 Pa. 280; Glyde v. Keister, 32 Pa. 85.

Under the act of 1887 a married woman cannot bind herself generally: Real Estate Inv. Co. v. Roop., 132 Pa. 503. She is not empowered to borrow money on her personal obligation from a stranger to carry out a contract authorized by the act: Sellers v. Heinbaugh, 117 Pa. 224; Vandyke v. Wells, 103 Pa. 49; Schlosser's Ap., 58 Pa. 495; Grosser v. Hornung, 10 W. N. 463.

The courts have always stricken off judgments confessed against married women where defendant has not been liable: Read v. Jewson, 4 T. R. 362; Dorrance v. Scott, 3 Wh. 309; Caldwell v. Walters, 18 Pa. 79; Glyde v. Keister, 32 Pa. 85. The act of 1887 does not change the method of redress: Real Estate Inv. Co. v. Roop, 132 Pa. 496.

The record of a confessed judgment against a married woman should be such as to sustain itself and import liability, when the fact that defendant is a married woman is made to appear · Baker v. Singer Mfg. Co., 122 Pa. 363.

The case of Koechling v. Henkel, 144 Pa. 215, is not in conflict with this conclusion. That case simply decided that an auditor, on the distribution of the proceeds of a sheriff's sale, cannot treat as a nullity a judgment of the court, regular on its face—coverture of defendant not appearing.

The contract between a building and loan association and its debtors is of an exceptional character, and is specially provided for in the acts relating thereto. Such associations can only loan to and contract for payment of premiums, dues, fines, etc., with members. A married woman has no power under the act of 1848 to acquire membership in such association and to assume the obligations incident thereto: Wolbach v. Lehigh Asso., 84 Pa. 217. The act of April 10, 1879, giving her such power, was not followed here. It was not repealed by the act of 1887.

There was no power in the prothonotary to enter such a judgment, and therefore it should be striken off. The prothonotary can confess judgment on warrant only when on the instrument the amount due appears, or can be rendered certain by calculation from its face: Whitney v. Hopkins, 135 Pa. 246; Conway v. Halstead. 73 Pa. 354.

OPINION BY MR. JUSTICE GREEN, January 3, 1893:

The second clause of the first section of the act of June 3, 1887, P. L. 332, entitled the married persons property act, is in the following words, viz.: " But every married woman shall have the same right to acquire, hold, possess, improve, control, use or dispose of her property, real or personal, in possession or expectancy, in the same manner as if she were a feme sole, without the intervention of any trustee, and with all the rights and liabilities incident thereto, except as herein provided, as if she were not married."

The defendant in this case was a married woman, living apart from her husband, and owning certain real estate in her own name and right. Desiring to improve a portion of it by erecting a house upon it, she borrowed $800 from the plaintiff and gave a judgment bond in her own name for the payment of the money. Judgment having been entered by confession under the warrant of attorney which accompanied the bond, the property was sold upon execution issued on the judgment. After this the defendant applied to the court below by petition setting forth the facts, and alleging that she was a married woman when the judgment was confessed and asking to have the judgment declared void, and the sale and all subsequent proceedings set aside. Upon the presentation of this petition an auditor was appointed to take testimony and report the facts, and make distribution of the fund arising from the sale. A report having been filed finding the judgment was void, on account of the marriage of the defendant, and setting asid- the sale and all proceedings, the report was confirmed by the court below, the judgment was declared void, and the execution and sale thereunder were set aside. The whole question in controversy turns upon the validity of the judgment. The auditor found, upon the testimony taken before him, that the judgment bond given by Mrs. Fritz to the plaintiff was given to secure the payment of a loan of eight hundred dollars, made by the plaintiff to her, for the purpose of being used by her to pay for the erection of one or more buildings on land belonging to her in her own right, and he also found that the money was so used, being paid to the contractor who erected the building. The money was therefore borrowed and used by the defendant for the improvement of her separate estate.

Prior to the passage of the act of June 3, 1887, we held that, while a married woman might make contracts so as to bind herself for the improvement of her separate real estate, she could not give a valid bond for money borrowed, though it was actually used for that purpose: Sellers v. Heinbaugh, 117 Pa. 224. But the act of 1887 has changed entirely this aspect of the subject. In addition to the second clause of the first section of the act, the third section also confers capacity in the following words: " A married woman shall be capable of entering into and rendering herself liable upon any contract relating to any trade or business in which she may engage or for necessaries, and for the use, enjoyment and improvement of her separate estate, and for suing and being sued either upon such contracts, or for torts, done to or committed by her, in all respects as if she were a feme sole."

It will be observed that her capacity to contract, within the sphere in which she may contract, is made as broad as if she were a feme sole, that is, it is without limitation. And it embraces any kind of a contract which a single woman could make in reference to the several subjects mentioned. In both the first and second sections of the act, one of these subjects is the improvement of her separate estate. A married woman therefore, since the act of 1887 was passed, may make any kind of a contract in relation to the improvement of her separate estate, which she could make if she were a single woman.

In the case of Bauck v. Swan, 146 Pa. 444, we held that a married woman had capacity to make a contract for the sale of her separate real estate, and, because she had that right, she had capacity to make an executory contract with an agent to sell it for her, and was liable in an action brought by the agent to recover compensation for his services. The decision was based upon the proposition that as she possessed the power to sell in the same manner as if she were single she had the same power to employ another to sell for her.

In Koechling v. Henkel, 144 Pa. 215, we said: " The married person's property act of 1887 extended the rights of married women far beyond any previous act . . . . A married woman may now engage in business, and enter into contracts in regard to it, or the management of her separate estate, as fully as a feme sole. This extension of her powers necessarily involves

the right to sue, and the liability to be sued; and when she may be sued she may confess judgment. In other words, as to every contract which she is authorized to make, her rights and responsibilities are those of a feme sole."

Of course, if she were a feme sole she could borrow money for the purpose of improving her real estate. And if she could borrow money for that purpose she could be sued for its recovery, and therefore could confess a judgment for securing its payment. We also said in the last case above cited: "We cannot say since the act of 1887 that a judgment confessed by a married woman is void. At most it is voidable, and may be set aside upon her application, where it is made to appear that it was not authorized by the act of 1887. But so general is her power to contract now, that her inability is the exception rather than the rule."

In the case of Real Est. Inv. Co. v. Roop, 132 Pa. 496, although we decided that the act of 1887 did not confer general contracting power upon married women, and therefore she could not become surety for her husband's debt, we did decide that, within the scope of her contracting power conferred by the act, she could make any kind of a contract which she could have made if she were feme sole. In the course of the opinion Mr. Chief Justice PAXSON said: " The act of 1887 certainly does go very far in enlarging the powers of married women. The first section gives them the power of a feme sole as to the acquisition, ownership, possession, control, use or disposition of property of any kind in any trade or business in which they may engage, or for necessaries, and for the use, enjoyment and improvement of their separate estate, and ' to make contracts of any kind, and to give obligations binding herself therefor,' . . . . The second section declares that a married woman may bind herself by contracts relating to any trade or business in which she may engage, or for necessaries, and for the use and enjoyment of her separate estate, and may sue and be sued, etc., in all respects as if she were a feme sole . . . . Viewed in this light it unfetters a married woman, subject to the restrictions before mentioned, for three purposes, viz., (*a*) where she engages in trade or business; (*b*) in the management of her separate estate; and (*c*) for necessaries. For any of these purposes she may bind herself and her estate or business by her

contracts, and, I have no doubt, may lawfully confess a judgment."

It is quite unnecessary to engage in any review of the cases which arose under the legislation prior to the act of 1887. They are entirely inapplicable for the simple reason that there was no such legislation prior to this act. They were attempts to establish liability inferentially by reason of the separate ownership of the property of married women conferred by the act of 1848, and kindred acts thereafter. The act of 1887 must be adjudged upon its own terms; and in accordance therewith, and with the principles announced in the cases that have arisen since its passage, we hold that the judgment confessed in the present case was a lawful exercise of the contracting power conferred by the act.

It was contended for the appellee that no judgment could be entered by the prothonotary on the bond and warrant, because no definite sum could be ascertained on the face of the instrument, and the act of 1806 was therefore inapplicable. The case of Conway v. Halstead, 73 Pa. 354, was cited in support of this contention, but an examination of that decision shows it is not at all in point. It was an agreement for the sale of land by the acre and the number of acres was not stated, but was to be ascertained by a survey. It was impossible to determine any amount due without resorting to evidence outside the contract. In the present case the bond is in the ordinary form and the obligor agrees to pay the definite sum of sixteen hundred dollars, and for that amount judgment is authorized to be confessed. In the condition it is agreed that if the obligor pay to the obligee the specific sum of $800 in certain circumstances distinctly stated, the obligation should be void. If that money or any part of it has been paid, the obligor can show it affirmatively and have the amount of the judgment corrected, and this is precisely what we held in Whitney v. Hopkins, 135 Pa. 246. Our Brother WILLIAMS there said: "The possession of an instrument in writing for the payment of money affords proof, prima facie, of a right in the holder to recover upon it according to its terms. The holder is not required to prove that it has not been paid. His case is made by the production of the instrument, in the first instance, and the burden of showing payment is on him who alleges it."

Here the judgment is entered lawfully for the precise sum designated in the bond. The obligor can avoid the bond by showing that she has paid another definite sum, to wit, eight hundred dollars, according to the terms of the condition. That is a duty which rests upon her. In no point of view can it be said that the amount for which judgment is to be entered cannot be ascertained upon the face of the instrument. We are clearly of opinion that the judgment was lawfully entered.

The judgment of the court below is reversed, the exceptions to the auditor's report are sustained and the report is set aside, and the execution and all proceedings thereunder are restored at the cost of the appellee.