## Thomas Mitchell *v.* Caroline Richmond, Appellant.

*Married women—Promissory note—Life insurance.*

A married woman may bind herself by a promissory note given by her and accepted in payment of the original premium for a policy of insurance on the life of her husband for the benefit of herself, if living at the death of her husband, and if she should then be dead, to be paid to her children.

Argued Oct. 23, 1894. Appeal, No. 43, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1893, No. 646, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on promissory note given by married woman for first premium on life insurance policy.

The jury returned the following special verdict:

"We find for the plaintiff in the sum of $248.24, subject to the opinion of the court upon the question of law reserved, to wit: We find that at the time the note in suit was given by the defendant, Caroline Richmond, she was a married woman, the wife of D. Richmond; that said note was given in payment of the first premium on a policy of insurance on the life of the husband, the loss thereof payable to Mrs. Richmond, if living at the time of the death of her husband, which policy at her request was changed thereafter to a policy making the loss payable to Mrs. Richmond, if living at the death of her husband, and if she were dead, then to her children, which policy was delivered and was in force.

"If the court be of the opinion that, under the law of Pennsylvania as it stood at the date of the note, to wit, July 25, 1892, the obligation is such that a married woman could bind herself therefor, then judgment to be entered in favor of the plaintiff for the amount of the verdict. If the court be of the opinion that on these facts the law is with the defendant, then judgment to be entered in favor of the defendant non obstante veredicto."

The following opinion was filed by EWING, P. J.:

" The question reserved squarely raises the question of the power of a married woman to bind herself by a promissory note given by her and accepted in payment of the original premium for a policy of insurance on the life of her husband, for the benefit of herself if living at the death of her husband, and if she should then be dead, to be paid to her children.

" That the wife has an insurable interest in the life of her husband has not been an open question for a hundred years: Read v. Royal Exchange, Peake's Adm. Cases, 70.

" The 25th section of the act of May 1, 1876, P. L. 60, Purd. 914, pl. 55, enacts that ' A policy of insurance issued by any company incorporated under this act on the life of any person, expressed to be for the benefit of any married woman, whether procured by herself, her husband or any other person, shall inure to her separate use and benefit and that of her children independently of her husband or his creditors, or the person effecting the same or his creditors.' This shows the drift of legislation prior to the act of 1887.

" The wife having an insurable interest in the life of her husband, there can be no doubt that, as the law now stands in Pennsylvania, she can take out an insurance policy on his life, paying for it with her own money, and hold that policy as her own separate estate and property, free from the creditors of her husband.

" The married person's property act of 1887 greatly enlarged the powers and removed the disabilities of married women. The 1st section provides that ' Marriage shall not be held to impose any disability on or incapacity in a married woman as to the acquisition, ownership, possession, control, use or disposition of property of any kind in any trade or business in which she may engage, or for necessaries and for the use, enjoyment and improvement of her separate estate, real and personal, or her right and power to make contracts of any kind, and to give obligations binding herself therefor, but every married woman shall have the right to acquire, hold, possess, improve, control, use or dispose of her property, real and personal, in possession or expectancy, in the same manner as if she were a feme sole.' ' And with all the rights and liabilities incident thereto, except as herein provided, as if she were not married, and property of every kind, acquired or earned by a woman before or during

marriage, shall belong to her and not to her husband.' Then follows the exception, that she shall not mortgage or convey her real estate without the joining of her husband therein.

" The 2d section contains the provision that she may not become accommodation indorser, guarantor or surety for another.

" There is no exception to the broad language of the 1st section forbidding a married woman from insuring the life of her husband, nor from giving her own obligation in payment thereof. The 2d section, while enumerating certain powers of the married woman specifically, does not take away the powers granted in the 1st section, except as above stated.

"If the defendant in this case had, in business or in managing her separate estate, become the creditor of a stranger, and the payment thereof were largely contingent on the life of the debtor, can there be any doubt that, under the provisions of this act, she could insure his life to make more secure the payment of the debt, or that she could give her obligation for payment of a premium? If Mrs. Richmond had already had a policy on the life of her husband, with annual premiums heretofore paid, why would not that policy, with a money value readily ascertainable, be her separate property? And why could not she, to preserve that policy from lapsing, pay the premium by giving her obligation therefor, if the company would accept the same?

" The act of 1887 not only gives a married woman power to manage her estate existing, but gives her power to acquire property and to give her obligations therefor as though she were a feme sole.

" In the recent case of Evans v. Evans, 155 Pa. 577, it was claimed that a horse purchased on credit of the wife was the husband's. The Court, GREEN, J., says, ' The theory that because she borrowed the money with which to pay for the horse, it was a purchase on credit and therefore the horse belonged to the husband, has no force, first, because the wife paid her own money for the horse, and, second, she did not get the money from her husband, but borrowed it from a third party. The validity of that note to that person has no place in this contest, but if it had, under the new married person's property act of 1887 we have affirmed the validity of the judgment of a married woman for borrowed money and could not well deny

the validity of her promissory note given for the same pur-
pose. The decisions on this subject prior to the act of 1887
are not applicable now.'

" The recent decisions all run in the same line, i. e., holding
the act of 1887 as meaning literally what it says. The pre-
sumptions are that the promissory note of a married woman is
a binding obligation, and, to defend successfully on the ground
that she is a married woman, it must be shown that it comes
under some of the exceptions contained in the act of assembly.
This note does not come under any such exception.

" Even had this note been given for a policy belonging to
the husband, it was not a guaranty, or an accommodation in-
dorsement, or becoming surety. It was given and received
in payment for a policy delivered."

Judgment was entered for plaintiff.

Defendant appealed.

*Errors assigned* were (1, 2) entry of judgment on verdict;
(3, 4) portions of the charge submitting the case to the jury.

*J. A. Wakefield*, for appellant.—The note was not given in
connection with her separate estate. The policy did not bene-
fit her until discoverture by death of her husband. This is not
the separate estate contemplated by the act of 1887.

*John Wilson* and *Charles A. Woods*, for appellee, not heard,
cited: Acts of May 1, 1876, P. L. 58; April 9, 1850, P. L.
432; Endlich on Married Women, 119, 536 and 444; Patter-
son v. Robinson, 25 Pa. 81; Milligan v. Phipps, 153 Pa. 208;
McCormick v. Bottorf, 155 Pa. 331.

PER CURIAM, Nov. 5, 1894:

There is nothing in the third and fourth specifications of
error that would justify a reversal of the judgment. The first
and second specifications relate to the question of law reserved.
That question has been so fully considered and satisfactorily
disposed of by the learned president of the court below, in his
opinion sent up with the record, that little, if anything, can be
added thereto; and we therefore affirm the judgment on his
opinion.

Judgment affirmed.